EXHIBIT 1

# CONTRACT

In San Juan, Puerto Rico, this 2̲3̲ day of January, 2007.

## APPEAR

**AS PARTY OF THE FIRST PART: CONFEDERACION HIPICA DE PUERTO RICO, INC.,** a non for profit corporation organized and operating under the laws of the Commonwealth of Puerto Rico, represented in this act by its President Mr. Juan Carlos Negrón, of legal age, single, executive, and resident of Bayamón, Puerto Rico, hereinafter referred to as CONFEDERACION or THE CONFEDERACION.

**AS PARTY OF THE SECOND PART: CAMARERO RACE TRACK CORP.** a corporation organized under the laws of the Commonwealth of Puerto Rico, represented in this act by its President Mr. Ervin G. Rodríguez Vélez, of legal age, married, executive, and resident of San Juan, Puerto Rico, hereinafter referred to as CAMARERO.

Both parties have the legal capacity to enter into the present contract and thus freely:

## STATE

**ONE:** The owner of the license to operate Hipódromo Camarero is Camarero Race Track Corp.

The corresponding documents and certifications empowering the persons that will sign this contract representing the entities named in this numeral will be made available to all other parties at the moment of signing and executing this contract.

**TWO: Definitions.** In addition to the words and terms elsewhere defined in this Agreement, the following words and terms hereinbefore and hereinafter used shall have the following meanings:

**Act.** Law No. 83 of the Legislature of Puerto Rico, approved July 2, 1987, as amended, and all future acts supplemental hereto or amendatory thereof.

**Base Year Budget.** Is defined as the budget which is based upon actual past experience and agreed to by the parties as a means to provide a level of understanding and guidance for the parties on which to base future annual budgets. The "Base Year Budget" is not to be considered by the parties as either a minimum budget or a maximum budget (unless stated otherwise in this contract). It, is

1

understood that anywhere in this contract that a base year budget is established that funding for these budgets will be made in equal amounts on a monthly basis (unless stated otherwise in this contract) by both parties into a separate trust account for said budget. Payments from said Trust account will require signatures and/or authorization of both parties. The Base Year Budget will be considered the Annual Budget for the First Year of the Contract.

**Confederación.** Collectively or individually, as the case may be, Confederación Hípica de Puerto Rico, Inc., each of its present members and each of the persons becoming members of the Confederación Hípica de Puerto Rico, Inc. during the Term.

**Hipódromo Camarero.** The race track owned by CAMARERO located in Canóvanas, Puerto Rico.

**Handle.** The total amount of moneys wagered on races less any/all voids, cancellations and/or refunds.

**Horse Owner.** An individual, a partnership or a corporation and/or a syndicate, owner of any race horse or race horses, duly licensed as such owner by the appropriate Puerto Rico Governmental Body.

**License.** The license issued by the Puerto Rico Racing Commission to operate Hipódromo Camarero.

**Order.** Any award, decision, injunction, judgment, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any Governmental Body or by any arbitrator.

**Program Purses.** The purses established from time to time by the Puerto Rico Racing Commission to be awarded on each particular race which is run in Hipódromo Camarero.

**Puerto Rico.** The Commonwealth of Puerto Rico.

**Purses.** Collectively, the Program Purses and the Supplemental Purses, including the Horse Owners' revenue from Simulcasting, Impresos and Entertainment Center.

**Racing Day.** Any day or night during which a full racing program shall have been run.

2

**Racing Year.**   The calendar year.

**Simulcast/Simulcasting**. Is the live audio and visual transmission of a race or races to and/or from another location for para-mutuel wagering purposes.

**Supplemental Purses (Retroactive/Retroactiovo Purses).**   The balance of the Horse Owners share of the Take as defined   in this Agreement, after the deduction for the regular authorized purses (commonly known as "program purses") and any other deductions authorized as part of this contract.

**Take.**   The aggregate dollar amount to be deducted, pursuant to the Act, from the Handle to be divided between CAMARERO and the Horse Owners in accordance with this Agreement.

**Term.**   As defined in Paragraph Five (5).

**Tri-Party Committee.**   A three party committee composed of Confederación, the track management and the Racing Administrator's representative(s).   The primary   objective of which is to plan, schedule and prepare the Daily Racing Program, Conditions Book and the Racing Plan.

**THREE:**   Camarero Race Track Corp. is the owner and operator of "Hipódromo Camarero" located at Canóvanas, Puerto Rico. From here on it  shall be referred to,  as CAMARERO".

**FOUR:** The Confederación states that it appears as the representative of not less than Two Thirds (2/3) of all of the owners of race horses in Puerto Rico presently licensed as such, which race at Hipódromo Camarero, and that it enters into this Contract on its own behalf and on behalf of each of said individual horse owners. CAMARERO agrees, that as long as this contract shall be in force, and The Confederación continues to represent no less than two thirds (2/3) of all horseowners, it will   recognize Confederación as the exclusive agent and representative of said horse owners for the negotiation of any problems common to all or a majority of the horse owners at Hipódromo Camarero".

**FIVE: Terms of the Contract:**   The Contract will commence on January 5, 2007 and expire on December 31, 2010.

**SIX:  Distribution of Take.**  The "take" as defined by the Racing Law and Regulations will be divided in a proportion of 50% for The Confederación  and 50%

3

for CAMARERO. It is specifically understood and agreed that the obligation of CAMARERO to pay the purse moneys referred to in this paragraph and to make the payments to The Confederación referred to in paragraph ten (10), shall be expressly subject to and conditioned upon each and every one of the following conditions:

a)    That the present license of CAMARERO to operate a race track granted by Resolution of the Racing Board of Puerto Rico is maintained throughout the term of this contract or renewed by appropriate resolution of the Racing Board for the extended term of this contract, if any. Said license to include the terms providing for the right to operate a racetrack in the San Juan Region of Puerto Rico and the right to conduct all types of authorized betting, both at the track and off track, anywhere in the Commonwealth of Puerto Rico, based on races held at Hipódromo Camarero, and the number of racing days at Hipódromo Camarero as authorized by the Racing Board.

b)    Camarero shall not have any option to terminate this Contract under paragraph 6(a) above in the event the renewal of its license is in granted on a non-exclusive basis, as long as no other racetrack is authorized in the San Juan Region during the term of this Contract.

c)    The obligation of CAMARERO to make the payments to The Confederación referred to above shall also be expressly subject to and conditioned to The Confederación continuing to have as members 2/3 of all licensed horse owners. If at any time during the term of this Contract The Confederación ceases to have as its members 2/3 of the licensed horse owners, the obligation of CAMARERO to make the payments referred to in this paragraph hereof shall cease and terminate at the option of CAMARERO. The Confederación agrees to provide CAMARERO, at its request, from time to time, with an up-to-date listing of the membership of The Confederación.

**SEVEN. PAYMENT AND DISTRIBUTION OF PURSES:** The take and/or purse monies to be distributed by CAMARERO during any contract year of this Contract, as provided herein, shall be allocated as between the various classes and categories of horses and the various races run each racing day during the racing year and as between the horses participating in each race in accordance with the Horse

4

Racing Law and its Regulations, the Regulations of the Racing Board of Puerto Rico and the Racing Plan (Plan de Carreras) issued in connection therewith.

Except as may be otherwise required or requested by the Racing Board of Puerto Rico or other appropriate governmental authority, the aforesaid purse monies allocated as aforesaid, less deductions therefrom which may be required by law (such as the excise tax on purses) and less other required or authorized deductions, shall be paid as follows:

1)    The excise taxes on purses deducted by CAMARERO from any of the said monies shall be paid by it to the Secretary of the Treasury of Puerto Rico.

2)    Pay to The Confederación the dues payable by every member of The Confederación,   the deduction of which is hereby authorized by The Confederación and by all the members of The Confederación.  The Confederación will inform CAMARERO the name of every new member of The Confederación so that the deduction of the dues may be done promptly by CAMARERO .  The Confederación will hold CAMARERO  harmless with respect to any claims made as a result of any such deduction of dues and payment of the same to The Confederación.

3)    The balance of the regular authorized purses (commonly known as "program purses") remaining after the deductions aforesaid and any other deductions which may be required or authorized, shall be made available by CAMARERO  to be paid directly to the horse owners within forty eight (48) hours of the time they are earned,  or at such later time in accordance with the regulations of the Racing Administration, as the net regular purses to the individual horse owners entitled thereto.

4)    Additional purses (retroactive) calculated so that the regular purses (program purses) and the additional purses (retroactive) total 50% of the "take" as provided herein- less the aforesaid deductions and any other deductions which may be required or authorized, including payments duly authorized by owners on horse financing loans, will be deposited by CAMARERO in an account of The Confederación.   Monies pertaining to the races celebrated on Fridays, Saturdays and Sundays will be deposited on the following Monday and on that same day a copy of the deposit slip will be provided or made available to The Confederación.  Monies



5

pertaining to the races celebrated on Mondays, Wednesdays and Thursday (and Thursdays whenever races are celebrated on said day) will be deposited on the following Friday and a copy of the deposit slip will be provided or made available to The Confederación on that same day.

There shall be a recapitulation at the end of each contract month and at the end of each contract year of all purse monies paid by Camarero during such month or such year.

A)   In the event that the aggregate of all such payments shall have exceeded the percentage of CAMARERO's  "take" during such year, such excess shall be repaid to CAMARERO  by The Confederación (to the extent the overpayment has been made to The Confederación as opposed to horse owners who were  not members of The Confederación) within ten (10) business days after the end of such racing year.  In the alternative, CAMARERO may, at its option, on notice to The Confederación, reimburse itself for such excess from any monies which may be or thereafter become payable to The Confederación (or its members) under this contract.

B)   In the event that the aggregate of all such payments shall have been less than the percentage of CAMARERO's  "take" during such year then CAMARERO will pay such difference to The Confederación  within the first ten (10) business days after the end of such contract year.

**EIGHT÷ VETERINARY CLINIC:** The Confederación/Horse Owners and CAMARERO  will share (half and half) the payment of the debt, including interests, incurred  by The Confederación with Banco Popular de Puerto Rico for capital Improvements of the veterinary clinic, amounting to the principal amount remaining of the original loan amount of $591,006.23.  As of January 5, 2007  the balance of principal is $65,000.00 and the accrued interests from September 21, 2006 to January 5, 2007 amounts to $1,702.78, or the amount currently certified by Banco Popular de Puerto Rico.  CAMARERO  will also share 50% of the cost of any new equipment purchased for the Veterinary Clinic, from the moment of signing this contract and as long as it is inforce.   The cost of this equipment must be supported

6

by actual invoices, documented payments (cancelled checks) by The Confederación and an actual physical inventory on premises.

This operation will maintain a standard schedule of charges to be assessed to any/all veterinarians for use of this facility.

CAMARERO will be solely responsible for the maintenance and repair of the physical structure (building, roof) as well as the surrounding grounds.

The Confederación will be solely responsible for the operation and management of the Clinic, including repairs and maintenance of the equipment and the interior of said veterinary clinic facilities. Said facility must be maintained in a first class operating condition.

The Confederación and CAMARERO agree to fund the annual budget for the operation, maintenance and repair of the veterinary clinic on a 50/50 basis for the duration of this contract. The Confederación and CAMARERO herein establish the amount of $457,156.00 as the "Base Year Budget" detailed in Exhibit A. This amount will serve as a minimum for the parties to establish future annual budgets throughout the life of this contract. The "Base Year Budget" and each future annual budget for the veterinary clinic, will include but not be limited to, such cost as; labor cost, purchase and repair of equipment, repairs and maintenance of said veterinary clinic. However, the budget will not include any drugs, medicine, food, bandages, wraps and/or any other horse or animal related material/supplies. The annual budget for the subsequent calendar years must be prepared by The Confederación, with complete documentation and details, and submitted to CAMARERO for review and approval no later than September 30th. of each year. Once the annual budget has been finalized and approved, CAMARERO will have no liability to make up any budget deficit in the operation and management of said facilities. In order to maintain accountability, The Confederación will provide to CAMARERO , twice a year, a Profit and Loss Statement of the Veterinay Clinic. The statement will also include a comparison of to the approved annual budget and will be certified by an Officer of The Confederación as to it being a true and actual representation of the financial position of the Veterinary Clinic.

7

**NINE: ADMINISTRATIVE EXPENSES:** CAMARERO will contribute to The Confederación each year during the term of this contract an amount of $90,000 for their administrative expenses. CAMARERO will have the right to request supporting documentation for the use of this money anytime it is considered necessary, CAMARERO will pay these monies in equal monthly installments.

**TEN: OTHER CONTRIBUTIONS TO HORSE OWNERS:** For the duration of the contract CAMARERO and The Confederación agree to fund on a 50/50 basis the monies necessary to pay:

a) The premium of the health plan for the Jockeys (medical plan, life insurance and accident insurance) and Trainers (medical plan only). Note: the Jockeys may substitute, on a dollar for dollar basis, the cost of valets in lieu of the cost of the Life Insurance.

b) The State Insurance Fund policy for the Jockeys.

The Confederación and CAMARERO herein establish as "Base Year Budgets" for item A the following amounts of $251,000.00 for the jockeys´ health plan and $272,000.00 for the trainers´ health plan. The future Annual budgets for A will be considered maximum budgets and any cost over runs will be the responsibility of the respective Trainers or Jockeys Associations.

The amounts to be paid in A will be based upon a jointly (CAMARERO and Confederación) approved annual budget. When requested to do so by The Confederación, CAMARERO will remit its 50% share of the amount due in B above, directly to The Confederación for payment by The Confederación. Actual payment for the amounts due, in A will only be made upon submittal of actual invoices by the Jockeys Association and Trainers Association. The Confederación agrees that its 50% share of all amounts due in A above, will be remitted by CAMARERO directly to the Jockeys Association or Trainers Association respectively. If requested, CAMARERO will provide evidence to The Confederación that supports actual payments made to the Jockeys Association or Trainers Association. CAMARERO and/or The Confederación will have the right to audit the records of the Jockeys Association and Trainers Association to insure compliance with payment of the Health Insurance Plans by these Associations. CAMARERO will have the right to

8

request documentation from The Confederación to show proof of payment for the State Insurance Fund Policy for the Jockeys.

**ELEVEN: CLASICO DEL CARIBE – HORSE RACING HALL OF FAME- CAMARERO, AWARDS – OTHER ACTIVITIES.**

The cost for the Clásico del Caribe, Racing Hall of Fame, Camarero Awards and other special activities will be borne on a 50-50 basis by both parties, based upon a jointly prepared and mutually agreed upon annual budget. It is agreed by both parties that the cost to finance the Clásico del Caribe will be borne by both parties in this way, both when Puerto Rico is the host country and when Puerto Rico is a visiting country.

CAMARERO and The Confederación agree to share these costs in the aforementioned way (50-50), after the deduction of any sponsorship income (cash and/or the value of any other form of sponsorship) related to same.

The Confederación and CAMARERO, as hereinafter detailed, establish the "Base Year Budgets" which will also be used as a level of understanding and guidelines by both parties to establish the future annual budgets for the items and/or events object of this section. The "Base Year Budgets", as detailed in Exhibits B (i), B(ii), B(iii) and B(iv), agreed to by the parties are the following: (i) Clásico del Caribe (Host Country) $500,000.00; (ii) Camarero Awards: $26,000.00; (iii) Horse Racing Hall of Fame: $32,000.00; (iv) Clásico del Caribe, (Visiting Country): $60,000.00.

The Clásico del Caribe, when held outside of Puerto Rico will be simulcasted, and both CAMARERO and The Confederación agree to jointly petition the Racing Board to approve said simulcasting, and to accept wagers for the same in Puerto Rico. This simulcast will include any other special races approved by The Confederación del Caribe.

**TWELVE:** Camarero will never deduct from the horseowners share of the take any contribution for payment of the autote account or any other account related to the betting equipment or computers or to the Sea Hípico equipment, computers and services.

9

**THIRTEEN: RACETRACK AND BACKSTRETCH INVESTMENT:** CAMARERO will invest an additional $3,000,000.00 in the racetrack including the backstretch and stable area during the period of the contract.

**FOURTEEN: TELEPHONE BETTING:** The Confederación and CAMARERO ECMC will together request, from the Racing Board, the approval of Telephone Account Betting. The Telephone Account Betting system is to be established in order to attract new racing fans (women, business people, younger adults) and bettors whom currently will not or cannot go to the Sea-Hipico Agency or attend the race track. It is agreed that the current agency fee received by the Sea-Hipico Agencies will be retained by a separate entity that will own and operate the Telephone Account Betting system. This agency fee to the Telephone Account Betting entity will always be the same as the Sea-Hipico Agency fee.

**FIFTEEN: TAX INCENTIVES:** The Confederación and CAMARERO will promote and request from the Central Government, the Legislature, the Racing Administration and the Racing Board, Tax Incentives for the racing industry including but not limited to:



    a)    Investment tax credits for the acquisition of thoroughbred horses.

    b)    Allow the horse owners to charge their losses in the operation of their stables against the income of other business or their personal income.

    c)    Elimination or reduction of the Government share of the "Impresos" service charge. The amount of the reduction received, if any, to be split 50/50 between The Confederación and CAMARERO.

**SIXTEEN: ILLEGAL HORSE BETTING:** The Confederación and CAMARERO will promote changes in the Penal Code establish higher penalties for persons involved in illegal horse betting. CAMARERO and The Confederación will also seek enforcement of such legislation.

**SEVENTEEN: FINANCING:** CAMARERO will increase, to $2,000,000 the financing for eligible Horse Owners, to buy imported and native thoroughbred horses.

**EIGHTEEN: IMPRESOS:** Effective one the date of the signing of this contract, CAMARERO agrees to share with The Confederación, on a 50/50, basis the revenue and/or monies received from the "Impresos" service charge. It is agreed

10

by the parties herein, subject to any order from the Racing Board, that there shall be from January to June  thirty six (36) races a week, seven (7) on Mondays, Wednesdays, Friday and Saturday, and eight (8) on Sundays; and thirty seven (37) races a week from July to December seven (7) races on Monday,Wednesdays and Saturdays and eight (8) races on Fridays and Sundays.  Nevertheless, the number of races per day, week, month and years will always be subject to the racing plan (Plan de Carreras) approved by the Racing Board.

     **NINETEEN:    SIMULCASTING:**    The  Confederación  and  Horse  Owners represented by The Confederación will consent to the Simulcasting of races held at Hipódromo Camarero to the jurisdiction accorded to with CAMARERO, under the following terms and conditions:

     a.  **Simulcast Races** – CAMARERO  will distribute to The Confederación as purses from simulcast a minimum of 50% of the simulcast fee negotiated with the receiving jurisdiction. The Racing Industry Standard in the United States for non-commingled simulcast races will be used as the guideline for negotiating the simulcast fee.

     b.  **Commingled Simulcast Races** (related party facilities where CAMARERO or any related entity has an ownership interest):  CAMARERO will distribute to The Confederación as purses on Commingled Simulcast Races, an amount equal to 50% of the following, minimum simulcast fees, received from the receiving jurisdiction:

| | |
|---|---|
| Pick 6 and Pick 3 | 8.0% |
| Trifecta, Quiniela, Exacta & Superfecta | 6.0% |
| Win/Place | 3.0% |

     c.  Commingled  Simulcast  Races-(non-related  party  facilities  wherein CAMARERO  or any related entity has no ownership interest): - CAMARERO will distribute to The Confederación as purses from the commingled simulcast races to non-related party facilities a minimum of 50% of the simulcast fee negotiated with the receiving jurisdiction.

     If at a minimum, the above percentage is  adhered to, then The Confederación will not withhold its consent to the Simulcasting in question.  Both parties know and understand that there are other factors that are of essence to Simulcasting.

**TWENTY÷    RECEIVING SIMULCAST RACES FROM OTHER RACE TRACKS:**

CAMARERO and The Confederación will jointly request the approval from the Racing Board to accept simulcasting of Triple Crown events in the United States as well as the Breeder's Cup Program.

If at any moment in the future CAMARERO and The Confederacion decide that receiving simulcast races from tracks outside of Puerto Rico is convenient and/or of benefit for them, they will together request permission from the Racing Board to approved said simulcasting.    In such cases, CAMARERO will pay to the Confederacion/Horse Owners, as purses, 50% of the "Take" after the negotiated Host Simulcast Fee has been deducted for the Host Track where the race was actually raced.  No satellite cost will in any way be allocated to Confederacion.

**TWENTY ONE: PRINCIPLES APPLICABLE TO ALL SIMULCASTINGS.**

(i)   For all kinds of simulcasting, CAMARERO grants The Confederation the right to audit the Totalisator system (at the sole cost of  Confederación) in order to verify the total amounts wagered, and to verify  any other information Confederación deems necessary and/or pertinent to protect its interests.  The audits must be requested in writing during normal business operating hours and may not interfere with daily operations.  This audit will be performed by  The Confederación CPA firm, at its own cost.

(ii)  CAMARERO  will provide any and all detailed breakdown of the bets in any jurisdiction, and any and all detailed information deemed necessary and/or pertinent by Confederación to determine if the amounts paid to The Confederación by CAMARERO   are correct and in accordance with the corresponding Simulcast Agreement.

(iii)  The Confederación will notify, in writing, to CAMARERO of any suspected violations/errors in simulcasting related to the total amount of reported wagers and/or payments  due  to  The  Confederación   relative  to  any  simulcast  agreement. CAMARERO  will then have thirty (30) days from the date of receipt of notification to explain and/or correct any violation and/or errors.  In the case of an actual violation of the simulcasting contract which is not corrected within thirty (30) days grace period,



12

then The Confederación will have the right to withdraw its approval to the actual simulcast contract in question, and CAMARERO agrees not to contend in any way The Confederación´s withdrawal of approval, including but not limited to, actions before The Junta Hípica and State and Federal Courts of all levels.

(iv) Each Simulcasting agreement will be separate from this contract and will contain a commencement and termination date, and a copy of the Contract between CAMARERO and the receiving or transmitting entity will be immediately delivered to The Confederación.

(v) Every Simulcasting Agreement will have a duration term of one (1) year and both parties now and here agree to perform said contracts for their entire period, unless both parties agree to an earlier termination.

(vi) Each Simulcasting agreement will be renewed automatically for similar one (1) year terms. For each individual contract, The Confederación will have the right to inform and notify CAMARERO, in writing, its intention to withdraw its approval to the contract in question for just cause. Said notice should be given to CAMARERO in writing at least 180 before the termination of the simulcast contract in question.

(vii) All simulcast fees will be calculated based on the total actual amount wagered (less voids, refunds and/or cancellations) in each receiving jurisdiction on races simulcasted from Puerto Rico including, but not limited to, the cost of service of the "impresos" and the "impresos" themselves, where CAMARERO or a related party is the recipient in whole or in part of said services or costs. When applicable, the calculations will be based on the daily currency exchange rate based on U.S. dollars according to the local Governmental Bank or Authority.



(viii) CAMARERO agrees that it will cover all the expenses, including the use of any and all satellites, for the simulcasting of races in/out of Puerto Rico. No satellite cost will be in any way allocated to The Confederación and/or Horse Owners.

(ix) When commingled simulcast wagering and non-commingled simulcast wagering are conducted on Puerto Rico races at the same facility and at the same time, then the wagering format for the non-commingled simulcast wagers shall not be identical to the wagering format of the commingled simulcast wagers.

**TWENTY TWO: CREATION OF SYNDICATES:** The Confederación will support the creation of syndicates to buy imported and native Thoroughbred horses. CAMARERO and The Confederación will request from the Racing Administrator to license the syndicate as long as the General Manager of the syndicate fulfill all the requirements to be licensed and there are no adverse reports on the integrity of all the other syndicate members.

**TWENTY THREE: TWILIGHT RACING:** If Camarero and Confederación consider it pertinent, appropriate or of benefit for the Racing Industry together they will request from the Racing Administrator changes in post times to allow for at least one (1) race day per week of twilight racing at El Comandante. The first race on a twilight race day will start between 4:00 P.M. and 6:00 P.M.

**TWENTY FOUR: DAILY RACING PROGRAM:** The Racing program at Hipódromo Camarero is the basis for attracting and keeping fans. The fundamental objective of a race is to have as many horses of equal ability in each race. Therefore, the Racing Plan, Daily Racing Program and Condition Book should be prepared and approved by a tri-party committee composed by horsemen, the track management, and the racing administration office, with the primary objective of meeting the public's expectations.

If the Racing Commission and/or Racing Administrator does not set up the aforementioned tri-party committee for scheduling and planning races (Conditions Book, Daily Racing Program, Racing Plan), The Confederación/Horse Owners will support Camarero in a petition to the Legislature for the development of a law which implements the tri-party approach for the development of the Racing Plan and Daily Racing Program.

**TWENTY FIVE: ENTERTAINMENT CENTER:** The Confederación will endorse CAMARERO actions to transform the Hipódromo Camarero site into an entertainment center, including but not limited to the approval of other types of gaming in the premises, such as, slots machines, bingo and/or Keno. If slot machines are approved for the Operating Company at the race track and the slot machine operation is operated by the Operating Company, then fifteen percent (15%) or the Racing Industry Standard percentage, whichever is greater, of the "Gross

14

Gaming Win" (total wagers less payback to winners and net of any government taxes on Win), or 50% of the commissions received by the Operating Company from a third party operator of said slot operations, will be distributed as purses to the Horse Owners.  The balance of the "Gross Gaming Win" will be retained by the Operating Company (if slot machine operations are operated by the Operating Company) for the cost of the capital investment and the ongoing operating costs of the slot operations.

THE CONFEDERACION agrees to approach positively any governmental agencies to support the establishment of an entertainment center at Hipódromo Camarero premises.

TWENTY SIX:  Auditing:  CAMARERO will permit the Accountant or CPA Firm of The Confederación to review/audit any and all documents related directly to the amount of wagering, "Take" and their methods of calculation.  The request to conduct such review / audit must be made at least fifteen (15) days in advance, be in writing, explain the purpose and / or intent of such review / audit, be conducted during normal business days and during normal hours of operation, state specifically the period in time (the specific race days) and be for the current and / or most recent calendar year completed.  Any such audits / reviews will be conducted at the premises and in the offices of Camarero and in such manner so as not to interfere with day-to-day operations.  CAMARERO will cooperate with providing copies of any/all directly related documentation.  Originals will not be permitted to be removed from the premises.

TWENTY SEVEN:  INCOMPLETE RACING PROGRAMS:  If for any reason less than a full racing program shall be run during any scheduled racing day, only the purse scheduled for each race which shall actually have been run shall be paid; and the purse for each race or races not actually run on such day shall be paid when such race or races (or substitute races thereof) are run on another race day, either as added races or as part of a separate race day; and when such suspended race or races (or race or races substituted) are so held, then the originally scheduled racing day shall be deemed to have been completed for the purposes of this contract.

TWENTY EIGHT:  STALLS AND BARNS

15

(a)   The occupancy of all stalls at "Hipódromo Camarero, including the allotment, re-allotment, and use thereof, shall be controlled exclusively by CAMARERO  under such rules as it may promulgate from time to time in its own exclusive discretion.  CAMARERO  agrees that in the event of a controversy with respect to allotment of any such stalls, no decision with respect thereto will be implemented by it without providing The Confederación with prior notification concerning the same.

(b)   Any changes, additions, or improvements in the stalls hereof shall be made only with the written consent of CAMARERO  and at the cost and expense of the horse owners occupying the same.   It is acknowledged that the stalls and all improvements made or to be made thereto by anyone whatsoever are and shall be the property of CAMARERO .

(c)   All stalls at "Hipódromo Camarero" and the interior of the barns shall be maintained by the horse owners and/or the person to whom it was assigned occupying the same in good and sanitary conditions at their cost and expense, except structural or major repairs whose cost shall be borne by CAMARERO, (unless made necessary by the fault or negligence of the horse owner), and every horse owner shall be responsible for the facilities contained in the barn area occupied by him.



**TWENTY  NINE:  RACING STRIPS**:  CAMARERO shall continue to maintain the main racing strip as well as the training track at "Hipódromo Camarero " in the best possible condition.

At least every two (2) years the parties will contract a track expert to evaluate and make recommendations concerning the conditions of the track, if any.   The parties will agree on the course of action to be taken and Camarero  will correct any deficiencies, if any, at its own cost.  The fees for the expert will be paid by both parties on a 50-50 basis.

**THIRTY:   OFFICE  SPACE:**   Office space presently utilized by   The Confederación in the barn area at "Hipódromo Camarero" shall continue to be made available, free of charge during the term of this Contract.  All interior partitions, furnishings, and all interior care and maintenance and the telephones shall be

16

provided by The Confederación at its cost and expense.  Plumbing and electrical lines, toilet facilities, air conditioning, water and electric power shall continue to be provided by CAMARERO, free of cost to Confederación.

**THIRTY ONE: HORSE POOL AND AMBULANCE:**  It is further agreed that CAMARERO shall provide a horse pool and maintenance thereof, and will also provide a horse ambulance for use in case of injury to any horse.

**THIRTY TWO:  OWNER'S ROOM:**  CAMARERO  shall continue to make available a room at Hipódromo Camarero  for the private use of the horse owners, which room shall be kept by The Confederación in proper condition.  Furnishing for said room shall be provided by The Confederación, at its cost and expense, except T.V. monitor, internal telephone service, betting machine and security guard that shall be provided by CAMARERO to Confederación free of any charge.

**THIRTY THREE:   ADDITIONAL CONSIDERATIONG**: The  Confederación pledges its full cooperation for itself and all of its members, and each of the individual horse owners who are or who may become parties to this contract, to assure adequate runners both as to number and quality in each race held at "Hipódromo Camarero".



**THIRTY FOUR:   NON-DISCRIMINATION POLICY:** The  Confederación expressly represents and agrees that all horse owners presently or hereafter licensed as such by appropriate governmental authority are and shall be eligible to be and to remain members in good standing of  The Confederación without discrimination by The Confederación as between any such horse owners similarly situated; and that no discrimination  of  any  kind  will  be  exercised,  practiced,  or  directed  by    The Confederación against any horse owner with respect to his or its present of future membership in The Confederación.

**THIRTY FIVE:  AGREEMENT NOT TO STOP RACES:**  The Confederación each and all of its members, jointly and severally, undertake and agree that neither The Confederación nor any of its members will hereafter engage in, participate in, instigate, encourage, or tolerate any stoppage or interruption of racing, or business or activities or CAMARERO, for any cause or reason whatsoever, directly or indirectly, during the term of this Contract.

17

**THIRTY SIX:    CONSTRUCTION OF SHUTE:**  As soon as possible after signing this Contract, CAMARERO will construct a shute in the main racing strip so that in the future it will be possible to have races at distances of one and one fourth (1 – ¼) miles and 400 meters.

**THIRTY SEVEN:    AUTHORITY TO EXECUTE CONTRACT:**  The Confederación represents that it is executing and delivering this Contract on behalf of itself and each of its members pursuant to authority duly granted by its Board of Directors and its members, CAMARERO represents that it is executing and delivering this Contract pursuant to authority duly granted by its Board of Directors and/or partners as may be the case.

**THIRTY EIGHT:**  If any clause in this contract is declared or becomes invalid, null or unconstitutional for any reason, all the other clauses will remain in full force and be binding upon the parties.

**THIRTY NINE:    JURISDICTION:**  CAMARERO and The Confederación recognize and agree that their relationship and the terms of this contract are subject to the Interstate Horse Racing Act, specifically in matters related to simulcasting.  It is also understood that they are subject to all other applicable Federal and/or State laws and regulations, and specifically subject to the Horse Racing Act (Ley Hípica) and its regulations.

**FORTY:**  This contract and the provisions thereof shall be binding upon and shall inure to the benefit of CAMARERO, its successors and assigns; and shall be binding upon and inure to the benefit of The Confederación, its successors and assigns and each and all of its members and each of their respective heirs, successors and assigns.

Upon the termination of this contract, if a new contract has not been agreed to and duly executed by the parties, then this contract will continue to be in full force and be binding to CAMARERO and The Confederación until a new contract is negotiated, agreed to and executed.

The failure of either party hereto to insist on strict compliance with any provision hereof by the other party, shall not be construed as a waiver of such provision.



This contract may not be amended or modified, except by an instrument agreed to by both parties in writing. However, no further change in the economic provisions of this Contract or in any of the other provisions hereof will be sought or requested by The Confederación or its members during the term of this Contract, to the end that the assurance and stability so essential for the effective operation of CAMARERO and so vital to the continuity and growth of the racing sport and the racing industry in Puerto Rico may be protected and promoted.

**FORTY ONE: ARBITRATION.** Any controversy, dispute or claim arising out of or relating to this Agreement, or the breach thereof, except those that are of the Jurisdiction of the Racing Board or Racing Administration shall be settled by arbitration in the City of San Juan, Puerto Rico, in accordance with the Commercial Rules of the American Arbitration Association (AAA), and judgment upon the award may be entered in any court having jurisdiction thereof. The "AAA" will not manage or administrate the proceedings.

If the parties hereto are unable, after good faith negotiations, which each hereby covenants to undertake, to resolve any dispute in respect to this Agreement, any part may commence arbitration by sending a written demand for arbitration to the other party. Such demand shall set forth with particularity and supporting detail or documentation the dispute or matter to be resolved by arbitration.

There shall be one arbitrator. If the parties shall fail to select a mutually acceptable arbitrator within fourteen (14) days after the demand for arbitration is mailed, the single arbitrator shall be appointed as in accordance with the rules of the American Arbitration Association, pursuant to the usual procedure of said Association in such cases. The fee payable to the arbitrator shall be based upon the time spent and the complexity of the matter in arbitration and shall be paid one half (1/2) by each party hereto.

Arbitration shall take place in San Juan, Puerto Rico, unless the parties otherwise agree. In arriving at his decision, the arbitrator shall restrict himself to the express language of this Agreement. Within fourteen (14) days after the arbitrator is appointed, or as soon thereafter as shall be reasonably possible and if necessary, a hearing with respect to the dispute or matter to be resolved shall be conducted by the

19

arbitrator. Each party may make written submissions to the arbitrator as each party may deem appropriate, with copies to the other party and a reasonable procedure for rebuttal, subject to the fourteen (14) day limit. As soon as reasonably possible, but not later than fourteen (14) days after the hearing is completed, the arbitrator shall arrive at a final decision, which shall be reduced to writing, signed by the arbitrator and mailed to each of the parties.

All decisions of the arbitrator shall be final, binding and conclusive on all parties and shall constitute the only method of resolving disputes or matters subject to arbitration pursuant to this Agreement, and judgment may be entered upon such decision in accordance with applicable law in any court having jurisdiction thereof.

This arbitration clause should not be interpreted to deprive the Racing Board and/or the Racing Administrator of their jurisdiction.

**FORTY TWO: NOTICES.** All notices, certificates, requests, consents, demands, directions, agreements or other instruments or communications between The Confederación and CAMARERO required to be given hereunder shall be given in writing given by (i) first class mail, registered or certified, return receipt requested, or (ii) private courier service, next day delivery, or (iii) telefax or other similar form of rapid transmission, or (iv) personally delivered to the receiving party of , if not an individual, to an officer of the receiving party.. All such communications shall be mailed, sent or delivered addressed as follows:

If to **CAMARERO :**

Camarero Race Track Corp.
Edif. Metro Office 3, Calle 1
Metro Office Park,
Guaynabo, PR  00968-1705

Attention: Mr. Ervin G. Rodríguez
President
Telephone: (787) 783-4445
Fax: (787) 783-6250

If to **THE CONFEDERACION:**

Confederación Hípica de
Puerto Rico, Inc.
PO Box 4460
Carolina, PR  00984

Attention: President
Telephone: 787/876-3944
Telefax: 787-256-5700

**FORTY THREE: AGREEMENT SUPERSEDES PRIOR AGREEMENTS.** This Agreement supersedes any other prior agreements or understandings, written or oral, between the parties with respect to the subject matter hereof.

**FORTY FOUR:**    The present contract has been signed on the date herein stated by **CONFEDERACION HIPICA DE PUERTO RICO, INC., CAMARERO RACE TRACK CORP.** This contract as well as all transactions (the "Other Transactions") contemplated thereby or resulting as a consequence thereof have become valid, executable and oblige the parties since the same has been approved by a General Assembly of the members of **CONFEDERACION HIPICA DE PUERTO RICO, INC.**

**IN TESTIMONY WHEREOF,** the parties affix their signature at Canóvanas, Puerto Rico, the day and year first above written.

CONFEDERACION HIPICA
DE PUERTO RICO, INC.

_____
**JUAN CARLOS NEGRON**
**PRESIDENT**

                              CAMARERO RACE TRACK CORP.

                              _____
                              **ERVIN G. RODRIGUEZ VELEZ**
                              **PRESIDENT**

G:\LITIGIO\CARMEN\1041.132\CONTRACT - CONFEDERACION-ELCOMANDANTE 12-15-06.doc
January 19, 2007

21