**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**PUERTO RICO HORSE OWNERS ASSOCIATION (PRHOA),**

**Plaintiff,**

**v.**

**CAMARERO RACE TRACK CORPORATION; ET AL.,**

**Defendants.**

**Civil No. 25-1580 (ADC)**

## OPINION AND ORDER

## I. Background

### A. Proceedings before this Court

On October 31, 2025, the Puerto Rico Horse Owners Association ("plaintiff" or "PRHOA"), filed the instant action against the following defendants: (i) Camarero Race Track Corporation ("Camarero" or "race track"), and its president, Ervin Rodríguez; (ii) a competing horse owners' association known as Confederación Hípica De Puerto Rico ("CHPR"), and its president, Rafael Matos, his wife, Nilda Fuentes, and the Conjugal Partnership between them; and (iii) Fernando Bonnet, and several unknown defendants ("defendants"). **ECF No. 2**.

According to the amended complaint ("complaint"), plaintiff is an organization that represents licensed racehorse owners who participate in races at the Camarero Racetrack, the only licensed racetrack in Puerto Rico. **ECF No. 2**. Camarero operates under an exclusive

franchise agreement with the government and, according to the allegations in the complaint, it is responsible for collecting and distributing wagering proceeds, including those from "simulcast-in" (*i.e.* betting on races broadcast from outside Puerto Rico).

Plaintiff claims that defendants acted in a concerted scheme to exclude PRHOA from receiving their legal share of the simulcast-in wagering revenues. The complaint further asserts that Camarero, as a state actor (due to its exclusive license and relationship with the government), is violating the constitutional rights of PRHOA members by depriving them of property without due process. Moreover, the complaint alleges that Camarero and CHPR notified PRHOA via letter dated October 17, 2025, that all distributions of simulcast-in proceeds to PRHOA members would cease on November 1, 2025. Plaintiff claims that defendants' actions from that point forward are arbitrary and retaliatory and intended to coerce PRHOA members into joining CHPR. In that same vein, plaintiff also asserts that defendants' post October 17, 2025 conduct amounts to a civil conspiracy to dismember PRHOA, antitrust, and other claims.

Plaintiff moved for a temporary restraining order ("TRO") against Camarero. **ECF Nos. 3**; **3-1**. The Court issued a Memorandum and Order granting the TRO, which was set to expire fourteen days after its issuance, on November 18, 2025. **ECF No. 5**; *see* Fed. R. Civ. P. 56(b)(2). Among other things, the Court also issued an order to defendants to show cause why the Court should not issue a preliminary injunction. *Id.*, at 5.

Defendants were served with process on November 5, 2025. **ECF No. 12**. On November 17, 2025, co-defendant Camarero (the only party impacted by the TRO) filed a motion for

extension of time to file certified translations and brief on a potential abstention hurdle. **ECF No. 15**. However, Camarero did not oppose or move to quash the TRO. *Id*. Instead, it stated that, among other things, "[plaintiff] also requested that the current TRO be extended..." and immediately after, that it "d[id] not oppose the extension requested by [plaintiff]." *Id*.

On November 21, 2025, plaintiff formally moved to extend the TRO until the resolution of the motion for preliminary injunction. **ECF No. 25**. On November 24, 2025, US Magistrate Judge Héctor L. Ramos-Vega ("Magistrate Judge") held a status and settlement conference. As per the minutes of the Magistrate Judge, Camarero did not oppose the request for extension of the TRO or otherwise move against it. **ECF No. 27**. Accordingly, the Court extended the TRO until resolution of the motion for preliminary injunction, *see generally State of Me. v. Fri*, 483 F.2d 439 (1st Cir. 1973), or until its dissolution or modification on motion by Camarero. **ECF No. 34**.

The Court referred plaintiff's request for preliminary injunction, **ECF No. 3**, and defendants' motion to dismiss or stay the case on abstention grounds, **ECF Nos. 32**, **33** and **45**, to the Magistrate Judge for a report and recommendation. On February 6, 2026, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the Court abstain and stay the case pending the resolution of parallel state court litigation (explained below). **ECF No. 47**. Plaintiff filed its objection to the R&R and defendants opposed it. **ECF Nos. 48** and **49**. Subsequently, the parties filed informative motions regarding the status of the state court proceedings. **ECF Nos. 50**, **52** and **53**.

On August 28, 2026, the Court entered an order to show cause allowing plaintiff to essentially supplement its objections. **ECF No. 58**. The parties filed simultaneous briefs in response. **ECF Nos. 56-58**.

**B. State Court Proceedings**

Years before filing the instant action, in November 2021, PRHOA filed suit against the same defendants named in this case to recover certain amounts of monies deducted or withheld by Camarero. *PRHOA v. Confederación Hípica de Puerto Rico*, Civil Case No. 2021CV00388 ("state court case" or state court litigation"). There, among many claims, counterclaims, and crossclaims, the parties moved the Court of First Instance to decide if PRHOA had a right (statutory or contractual) to receive proceeds from the simulcast-in wagering. As correctly noted by the Magistrate Judge in his R&R, the state court issued an opinion titled "Sentencia Parcial" on August 22, 2025, or (herein "judgment" or "partial judgment") granting CHPR's motion for summary judgment with respect to its counterclaim against PRHOA and its crossclaim against Camarero. Interpreting Puerto Rico law, that court held that PRHOA and its members do not have a right to receive the benefits derived from the simulcast-in wagering proceeds. Thus, the state court ordered PRHOA to pay Camarero the sum of $4,978,154, for the simulcast-in proceeds it had unlawfully received until that point. Thereafter, on July 29, 2026, the Puerto Rico Court of Appeals modified that "partial judgment." In its relevant part, the Court of Appeals held that PRHOA does not have a right to receive simulcast-in proceeds. See ECF No. 58-1 at 44 (translation to be submitted by plaintiff pending).

## II. Standard of review

United States Magistrate Judges are granted authority to make proposed findings and recommendations on a motion for injunctive relief, while the ultimate resolution of the motion remains at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); *accord* L. Civ. R. 72(a)(1). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b).

A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)).

To the extent a party's objections amount to no more than general or conclusory objections to the report and recommendation without specifying to which issues in the report the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate-judge, a *de novo* review is unwarranted. *Id.* "Instead, the report and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to ... submit[ ] papers to a district court which are nothing more than a

rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also*, *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Álamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). Hence, the court may accept those parts of the report and recommendation to which the party does not object. *See Hernández–Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114, 125–26 (D.R.I. 2004)). The Court, however, "is not required to make separate findings of fact or issue an opinion setting forth its own reasoning." *U.S. v. Bach*, 388 F. App'x 2 (1st Cir. 2010) (citing *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998)).

## III. Discussion

### A. The R&R and the parties' arguments

#### (i) The R&R

The Magistrate Judge recommends that the instant proceedings be stayed in deference to ongoing parallel state court litigation. **ECF No. 47**. The recommendation for a stay is based on *Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman*") and *Colorado River Water Conservation Dist.*

*v. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*") abstention doctrines. *Id*., at 15-25.[1] The Magistrate Judge reasoned that a federal court should "stay its hand" when a federal constitutional challenge turns on a state statute with an unclear meaning. *Id*. The Magistrate Judge found that there is substantial uncertainty regarding the interpretation of the Puerto Rico Horse Racing Act, specifically concerning which parties are entitled to simulcast-in wagering proceeds, issue that is presently before the local courts. Because a final determination by the state court on this question of Puerto Rico law could potentially moot the federal constitutional claims, the Magistrate Judge concludes that *Pullman* abstention is proper here.

The Magistrate Judge also justifies the stay under *Colorado River* in "considerations of wise judicial administration" and the conservation of judicial resources. **ECF No. 47** at 19-23. Indeed, the Magistrate Judge determined that the cases are parallel because both involve the same litigants (PRHOA, CHPR, and Camarero) and both hinge on the same controversy of competing claims related to simulcast-in revenue. The Magistrate Judge emphasizes the desirability of avoiding piecemeal litigation and identifies a risk of inconsistent judgments if both forums simultaneously decide the threshold question of whether PRHOA is entitled to the simulcast-in proceeds. Additionally, the report notes that the state court litigation is significantly more advanced.

---

[1] The Magistrate Judge determined that the so-called *Rooker-Feldman* abstention did not apply because "there has been no final judgment in the State Case." **ECF No. 47** at 13.

Finally, the Magistrate Judge explains that the record is bereft of factual allegations supporting a purported civil conspiracy or condition sufficient to raise a claim under 42 U.S.C. § 1985(3). The Magistrate Judge noted that the clear language of the October 17, 2025 letter links Camarero's halt of simulcast-in payments to the partial judgment issued by the state court. *See* **ECF No. 3-7**. He further noted that prior to the state court's decision, Camarero had advanced the position that PRHOA was entitled to simulcast-in proceeds. Additionally, the R&R points to the fact that the state court entered a "partial judgment" interpreting the Puerto Rico Horse Racing Act in a manner that excludes PRHOA and its members from entitlement to future simulcast-in payments. **ECF No. 47** at 18 ("but for the partial judgment of the [state court], it appears that Camarero would not have ceased the simulcast-in deductions. In its filings, PRHOA has conspicuously refused to confront such critical facts head on.").

In the alternative, the R&R also suggests denying the plaintiff's request for a preliminary injunction, noting that the plaintiff has failed to show a likelihood of success on the merits that is independent of the unsettled state law issues.

**(ii) Plaintiff's objections to the R&R**

Plaintiff's main objection is that this case arises from a new and independent course of conduct (triggered by Camarero's October 17, 2025 letter) which, according to plaintiff, is distinct from the "historical" issues (i.e. the monies paid to PRHOA members in connection with the simulcast-in wagers up until the October 17, 2025). **ECF No. 48**. Plaintiff asserts that this post--October 17, 2025 letter conduct involves coercion and compelled association under the

color of state-conferred power, as well as violations of federal antitrust laws that the state court cannot resolve.

Pursuant to that framing, plaintiff objects to the application of *Colorado River*, arguing that the federal and state proceedings are not parallel. While the state case concerns contractual and statutory interpretation of the distribution of proceeds and liabilities between the parties to both actions, the federal case, plaintiff contends, challenges Camarero's prospective and independent decision to suspend payments and allegedly force PRHOA members to join a rival association, co-defendant CHPR. Moreover, plaintiff points out that federal courts have exclusive jurisdiction over Sherman Act claims, 15 U.S.C. §§ 1 and 2, and thus the state court is incapable of providing the complete relief necessary to justify abstention under this doctrine.

Plaintiff further argues that *Pullman* abstention is inapplicable because the federal constitutional claims do not depend on unsettled questions of Puerto Rico law. Plaintiff maintains that the core questions—such as whether a state-licensed monopoly can use its power to coerce private association membership—are federal constitutional issues that can be adjudicated without first interpreting ambiguous state statutes. Plaintiff contends that postponing the adjudication of these federal rights creates a substantial risk that those rights will be lost through delay.

Regarding the denial of a preliminary injunction, plaintiff argues the R&R incorrectly characterized their injury as merely financial. It asserts that the loss of First Amendment freedoms, even for brief periods, constitutes irreparable harm. Furthermore, it argues that the

collapse of their organization is a harm that cannot be remedied by a later award of money damages. Finally, the objections challenge the R&R's findings regarding the likelihood of success. Plaintiff emphasizes that the state court's "Partial Judgment" is not final or enforceable, and therefore Camarero had no judicial mandate to unilaterally alter the distribution of proceeds.

**(iii) Defendants' response to the objections**

Co-defendant Camarero argues that the case at bar centers on unsettled questions of Puerto Rico law that are currently being litigated in state court. **ECF No. 49**. It emphasizes that the state court proceedings are advanced and have already resulted in a "Partial Judgment" determining that PRHOA is not entitled to the disputed revenues.

As to abstention, defendants maintain that the state and federal cases are "sufficiently parallel" because they arise from the same core dispute over simulcast-in wagering revenues. They reject plaintiff's claim that the October 2025 suspension of payments was a new, independent act. Furthermore, Camarero argues that the inclusion of Sherman Act claims does not preclude a stay because those claims are "inextricably intertwined" with state law issues and may be rendered moot. Regarding *Pullman* abstention, Camarero argues that the federal constitutional questions fundamentally turn on the interpretation of the Puerto Rico Horse Racing Act and related contracts. They assert that there remains a substantial possibility that Puerto Rico courts will further clarify these state law obligations, which could "eliminate or substantially modify" the necessity of reaching the federal constitutional issues. *Id.*, at 7.

Camarero also defends the R&R's recommendation to deny a preliminary injunction, arguing that plaintiff failed to demonstrate a likelihood of success on the merits or irreparable harm. They maintain that Camarero is a private entity making business decisions based on legal interpretations. Thus, it contends, its actions do not constitute state action despite operating under a state license. Furthermore, they characterize the alleged harm as purely economic and that any First Amendment claim is "tenuous at best." *Id*., at 10.

Finally, the response supports the R&R's finding that PRHOA's conspiracy allegations are "vague and conclusory." *Id*., at 12. It points to the fact that the complaint lacks specific factual allegations indicating an actual agreement among the defendants to deprive PRHOA of its rights. It argues that PRHOA is confusing the need for sufficient pleading with what can be proven at trial and that scant specifics regarding the formation of a joint effort are insufficient to sustain a civil rights conspiracy claim. Camarero concludes by requesting that the court either dismiss the complaint or stay the proceedings until the state case is finalized.

**(iv) The Order to show cause**

On August 28, 2026, this Court ordered plaintiff to show cause why its claims do not depend on a finding that PRHOA is entitled to receive proceeds from simulcast-in wagering, to reconcile certain representations made by it before the state court, and to address whether *T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ___, 146 S. Ct. 1739 (2026), bears on the applicability of the *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust*

*Co.*, 263 U.S. 413 (1923) ("*Rooker-Feldman*") abstention doctrine. **ECF No. 55.** Plaintiff timely complied. **ECF No. 56**.

However, a careful review and comparison of plaintiff's complaint and its subsequent motion in compliance with the Order to Show Cause reveals a post hoc "refinement" of its legal theories. The core of plaintiff's lawsuit is its claims related to the deprivation of wagering proceeds. *See* **ECF No. 2** at 1 ("Plaintiffs… seeks declaratory, injunctive, and monetary relief arising from defendants' concerted scheme to exclude PRHOA and its members from participating in simulcast-in wagering revenues to which they are legally entitled under Puerto Rico law…."). In contrast, the subsequent show cause motion re-frames the issues around the constitutional and anticompetitive conduct of Camarero as a state-licensed monopolist. **ECF No. 56**. According to plaintiff, eight of its eleven substantive counts do not require the federal court to find that its members are statutorily entitled to the simulcast-in wagering proceeds. Thus, plaintiff argues that the majority of its claims remain viable even if the court assumes the plaintiff has no underlying statutory right to the simulcast-in funds. **ECF No. 56**.

In response to this Court's questions related to *T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ___, 146 S. Ct. 1739 (2026), which held that the *Rooker-Feldman* doctrine applies even to state trial court judgments, plaintiff argues that the *Rooker-Feldman* doctrine still does not apply because the basic requirements for abstention thereunder are not met in this action. To wit, plaintiff argues that its alleged injury flows from Camarero's own independent and discretionary decision on October 17, 2025, to terminate distributions prospectively and coerce

members into joining CHPR—conduct that the state court's Partial Judgment neither commanded, authorized, nor addressed. **ECF No. 56** at 2 (calling Camarero's refusal to pay PRHOA's members a share of the simulcast-in wagering proceeds "Camarero's own, independent, unilateral decision").[2] Second, plaintiff asserts that it is not asking this Court to reverse the state court Partial Judgment. Instead, it maintains that its federal claims (under the First and Fourteenth Amendments, the Sherman Act, for civil conspiracy, and the Interstate Horseracing Act) are not the same claims litigated in the state case, as they target post-judgment constitutional and antitrust violations. **ECF No. 56** at 11-14.

Finally, the show cause motion makes an attempt to reconcile the tension between its current arguments and its prior litigation. **ECF No. 56** at 8-11. While plaintiff admits that it previously filed a cross-motion in state court seeking a declaration of its statutory right to the funds, it argues that litigants are legally permitted to advance alternative, even inconsistent, theories across different jurisdictions. It further explains that the state court's Partial Judgment addressed only a retrospective and narrow contract-privity question regarding historical withholdings. The federal lawsuit, by contrast, challenges Camarero's subsequent, prospective,

[2] The Court is baffled by plaintiff's characterization of Camarero's conduct. According to state court records, Camarero's position in the state court litigation has been that PRHOA has a right to partake on the simulcast-in purse. Despite Camarero's requests, both the trial and appellate courts of Puerto Rico have affirmatively ruled that plaintiff has no right to such funds. **ECF No. 58-1** at 42. Considering plaintiff's presumptively conflictive representations (which were initially flagged by the Magistrate Judge and then by this Court) and counsel's duty not to make false statements of fact or law, plaintiff is hereby **ORDERED** to submit Local Civil Rule 5-compliant translations of both its brief before the Puerto Rico Court of Appeals and the judgment entered by said court on July 29, 2026.

and "discretionary" conduct that occurred after the state court's ruling and was never litigated in the state case.

**IV. Analysis**

For the following reasons, the Court agrees with the Magistrate Judge and **ADOPTS** the R&R. **ECF No. 47**. At the outset, the Court concurs with the Magistrate Judge that plaintiff's case requires a finding that its members have a right to receive simulcast-in wagering revenue. **ECF No. 47** at 17-18. According to the available information, both the trial court and the local court of appeals have issued judgments stating, in no ambiguous terms, that "PRHOA and its members **are not entitled to receive the profits that are generated from the simulcast-in**." **ECF No. 30** at 14 (emphasis added); *see* **ECF No. 58-1** at 42. As discussed before, plaintiff's artful attempts to differentiate the state proceedings from this action are unconvincing and, frankly, disingenuous.

Plaintiff's uncandid position fails to address the relevant question: can they prevail in any of their claims if the state court determines that PRHOA members have no right to the wagering proceeds? The answer is no.[3] The Court will address each of plaintiff's arguments in turn. First, plaintiff's freedom of association claims hinge on the notion that "Camarero conditioned continued access to a benefit its members had received for thirteen years on their abandoning PRHOA and joining CHPR." **ECF No. 56** at 5. The fact is that the "access to a

[3] The following analysis assumes that there is federal jurisdiction, that plaintiff has standing and that it meets its burden to show that Camarero is a state actor, issues that are still outstanding.

benefit" refers to the simulcast-in monies. Therefore, when plaintiff complains about "Camarero condition[inig] continued access to a benefit," in reality it is challenging the state court's ruling which triggered the October 17, 2025 letter. Second, Plaintiff's equal protection claims share the same fate. Plaintiff can try all the tricks in the book, but when it asserts that such claims are linked to Camarero's decision to "continue[] to pay [only] CHPR-affiliated horse owners[,]" it fails to realize that such conduct results from the state court judgment, not Camarero's will. *Id*., at 5-6. Third, the same goes for plaintiff's due process challenges (procedural and substantive). Given the fact that Camarero's refusal to pay simulcast-in proceeds to PRHOA is a court mandate, plaintiff cannot establish a protected property interest over such funds, nor can it ask this Court to reverse a state court judgment by claiming that Camarero (not the state court, which issued the partial judgment that triggered the at-issue letter) failed to hear it before deciding to stop the payments. Furthermore, to find that such withholding "shocks the consciense" to the level of a due process violation would require the Court to question the state court judgment. *Id*., at 6-7.

Fourth, plaintiff's defense of its free-trade claims under the Sherman Act fares no better. Yes, state courts have no jurisdiction to entertain such claims. **ECF No. 56** at 7. However, that myopic argument misses the fact that plaintiff is only challenging a specific[4] conduct: "defendants… concerted refusal to deal and group boycott designed to force PRHOA's members out of the market for association-based representation in the horse-racing industry,

[4] Plaintiff points to no other act or conduct as a violation of the Sherman Act.

and to entrench CHPR's dominance." *Id*. That conduct, however, stems from a state court judgment interpreting state law, which plaintiff concedes this Court cannot overturn. Plaintiff has failed to provide any authority supporting this Court's review of a state court judgment because its application could in some way violate the Sherman Act. Moreover, aside from potential Eleventh Amendment immunity, generally, "the Sherman Act does not apply to state action[.]" *González-Droz v. González-Colón*, 717 F. Supp. 2d 196, 215 (D.P.R. 2010).

Fifth, plaintiff's arguments under the Interstate Horse Racing Act, 15 U.S.C. §§ 3001-3007, are duplicitous, because they were admittedly presented for adjudication to the state court. In addition, plaintiff failed to develop that argument. *See United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990). An independent review of the complaint convinces the Court that plaintiff's Interstate Horse Racing Act claims are not independent from its claim of entitlement to the simulcast-in proceeds. To the contrary, plaintiff's sole claim of a violation of the federal statute is the "suspen[sion of] the payment… simulcast-in proceeds … This unlawful deviation not only violates the [Puerto Rico] Horse Racing Act but also places Camarero in direct breach of the IHA." **ECF No. 2** at 23. Which is gobbledygook for: "we have a right to simulcast-in money pursuant to state law." Of course, as explained above, that is not true as per state court rulings. Since plaintiff's claims under the Interstate Horse Racing Act require a finding that Camarero violated Puerto Rico law, such claim is dependent on the outcome of the state case. Sixth, plaintiff's bid to dissociate its taking claims suffers the exact same flaw.

Seventh, because plaintiff concedes that its civil conspiracy and Puerto Rico Constitutional violations claim "rises and falls with" the above-addressed claims, they, too, fail to purport a ground that is independent from the state court proceedings, or at least plaintiff has failed to show otherwise. **ECF No. 56** at 7-8.

For all the above, the Court **OVERRULES** plaintiff's objections, **ECF Nos. 48** and **56** and **ADOPTS** the R&R, **ECF No. 47**. Accordingly, **ECF Nos. 33** and **45** are **GRANTED IN PART, DENIED IN PAR**T.

Plaintiff is hereby **ORDERED** to submit, within 15 days of the issuance of this Order, Local Civil Rule 5-compliant translations of both its brief before the Puerto Rico Court of Appeals and the judgment entered by said court on July 29, 2026.

The Court hereby **STAYS** the case on abstention grounds, as recommended in the R&R,[5] pending disposition of the state court case.

Accordingly, the TRO is hereby **DISSOLVED**, preliminary injunction is **DENIED** and the case is closed for statistical purposes. All other pending motions are **MOOT**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 22nd day of September, 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[5] In addition, the Court would have also granted abstention on *Rooker-Feldman* grounds in light of *T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ___, 146 S. Ct. 1739 (2026) which was issued months after the Magistrate Judge entered his R&R. *Id.*, at 1744 ("This case asks whether this rule bars suit when the state-court judgment at issue is subject to further review in state appellate proceedings. A straightforward application of the logic and reasoning underlying *Rooker-Feldman* leads to one conclusion: It does.").